IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Carlos M. Gill,<br><br>    Petitioner,<br><br>v.<br><br>Warden of McCormick<br>Correctional Institution,<br><br>    Respondent. | Civil Action No.8:09-3350-RBH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The Petitioner, a state prisoner, seeks habeas relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 17.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)©, D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on December 23, 2009.[1] On April 9, 2010, the Respondent moved for summary judgment. By order filed April 12, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 17, 2010, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion.

---

[1] This filing date reflects that the envelope containing the petition was stamped as having been received on December 23, 2009, at the McCormick Correctional Institution mailroom. (Pet. Attach.# 6.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

# **PROCEDURAL HISTORY**

The Petitioner is currently incarcerated at the McCormick Correctional Institution ("MCI"). In June 2000, the Petitioner was indicted for distribution of crack cocaine, distribution of crack cocaine within the proximity of a school, and conspiracy to distribute crack cocaine.[2] The Petitioner did not have trial counsel and proceeded to a jury trial on September 12, 2000, with the Honorable John C. Hayes, III, presiding. The jury found the Petitioner guilty as charged, and Judge Hayes sentenced him to concurrent sentences of twenty-five years imprisonment and a $50,000.00 fine for the distribution of crack cocaine; fifteen years imprisonment and a $10,000.00 fine for the distribution of crack cocaine within proximity of a school; and five years imprisonment for the conspiracy to distribute crack cocaine. (App. 21-22; 24-28;32-185.)[3]

The Petitioner timely filed a notice of appeal. Assistant Appellate Defender Eleanor Duffy Cleary represented him on appeal. On March 18, 2002, the Petitioner filed his appellate brief raising the following issue on appeal, quoted verbatim:

> Did the trial court err in finding appellant had waived his right to an attorney by his actions pursuant to State v. Jacobs, where the Court failed to inquire into his indigency status and appoint counsel after appellant explained to the court that he was unable to afford an attorney, and where the court failed to inquire into the knowing and voluntary nature of his waiver of counsel?

(App. 273.) The Petitioner also filed a Supplemental Final Brief raising the following issue, quoted verbatim: "The trial court lacked subject matter jurisdiction to try appellant for distribution of crack cocaine and distribution of crack cocaine within proximity of a school

---

[2]The Petitioner was arrested on these drug charges in April 2000. (App. 23.)

[3]The undersigned notes that because pages were missing in the record, on July 20, 2010, the Respondent filed a complete copy of the South Carolina Court of Appeal's opinion and the PCR Court's order. Apparently these pages of this copy of the opinion and order are not bate stamped so as not to effect the numbering of the remaining pages in Attachment # 1. The references in this report to the record are to the bates numbers.

2

because the indictments failed to allege the essential elements of the offenses." (App. 292.)

On June 23, 2003, the South Carolina Court of Appeals affirmed the Petitioner's conviction in a published opinion, *State v. Carlos Miguel Gill,* 584 S.E.2d 432 (S.C. Ct. App. 2003). (App. 3.) On July 8, 2003, the Petitioner filed a petition for rehearing. (App. 345-48.) On August 22, 2003, the South Carolina Court of Appeals denied the petition for rehearing. (App. 9.)

On November 21, 2003, the Petitioner filed a petition for a writ of certiorari in the South Carolina Supreme Court raising the following two issues, quoted verbatim:

> 1. Whether the Court of Appeals erred in finding petitioner waived by implication his right to an attorney by his actions pursuant to *State v. Jacobs*, infra, where petitioner presented a valid excuse for not retaining counsel - a lack of funds -- and where the trial court failed to inquire into his indigency status and appoint counsel after petitioner explained to the court that he was unable to afford an attorney?
>
> 2. Whether the Court of Appeals erred in finding the trial court had subject matter jurisdiction to try petitioner for distribution of crack cocaine and distribution of crack cocaine within proximity of a school where the indictments failed to allege the essential elements of the offenses?

(App. 351.) On September 23, 2004, the South Carolina Supreme Court denied certiorari and on September 29, 2004, the South Carolina Court of Appeals sent the remittitur back down. (App. 20.)

On July 29, 2005, the Petitioner filed a pro se application for post-conviction relief ("PCR") raising the following grounds for relief:

> 1. Waiver of counsel not voluntary nor knowing.
>
> 2. Trial judge erred in failing to address the dangers and disadvantages of self-representation.
>
> 3. Prosecutorial misconduct and vindictive prosecution.
>
> 4. Ineffective assistance of appellate counsel.

3

> 5. Trial court lacked subject matter jurisdiction to try applicant for second offense.

(App. 388-421.) On June 1, 2007, an evidentiary hearing was held before the Honorable Lee S. Alford. The Petitioner was present at the hearing and represented by W. Keith Martens, Esquire. On March 7, 2008, Judge Alford denied the Petitioner PCR and dismissed the PCR application with prejudice. (Return Attach. # 1- PCR Order of Dismissal.) The Petitioner timely filed a notice of appeal and was represented by Martens to represent him on certiorari.[4] (App. 1-2.) On October 1, 2008, the Petitioner filed a petition for writ of certiorari, raising the following issues:

> 1. Whether this Court should grant certiorari to determine an applicant for post conviction relief has received ineffective assistance of appellate counsel where applicant's appellate counsel abandoned an important constitutional argument during the course of appeal.
>
> 2. Whether this Court should grant certiorari to determine a criminal defendant was denied his constitutional rights when he was forced to trial without legal representation and without being warned of the dangers of self-representation.

On October 21, 2009, the South Carolina Supreme Court denied the petition for certiorari and sent the remittitur down on November 6, 2009.

In this habeas petitioner, the Petitioner raises the following grounds for relief, quoted verbatim:

> **GROUND ONE:** Whether this Court should grant Habeas Corpus relief to determine that Gill received ineffective assistance of appellate counsel because Gills' appellate counsel abandoned a constitutional argument during the course of appeal.

---

[4]Assistant Appellate Defender Elizabeth A. Franklin-Best initially represented the Petitioner in his PCR appeal. However, on June 26, 2008, the South Carolina Supreme Court relieved Franklin-Best, based upon a conflict of interest as a result of the Petitioner's allegations of ineffective assistance of appellate counsel. (App. 1.)

4

> **GROUND TWO:** Whether Gill was denied his constitutional rights when he was forced to trial without legal representation and without being warned of danger of self-representation.

(Habeas Pet.)

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

5

specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

6

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from

8

raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue,

9

he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

     D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

As the Petitioner raises two grounds for relief which are closely intertwined, the undersigned has chosen to discuss the two grounds together. In Ground One, the

Petitioner alleges his appellate counsel was ineffective for abandoning the issue on direct appeal of whether he was advised of the dangers of self-representation pursuant to *Faretta v. California,* 422 U.S. 806 (1975). Specifically, in Ground One, the Petitioner contends that, although appellate counsel raised this issue to the South Carolina Court of Appeals, appellate counsel later waived this issue by failing to raise it in a motion for rehearing or in his appeal to the South Carolina Supreme Court. In Ground Two, the Petitioner alleges he was denied his constitutional rights when he was forced to go to trial without legal representation and without being warned of the dangers of self-representation. The respondent contends these claims should be dismissed. The undersigned agrees.

On direct appeal, as set forth above, appellate counsel raised the following issue regarding the Petitioner's representation at trial, quoted verbatim:

> Did the trial court err in finding appellant had waived his right to an attorney by his actions pursuant to State v. Jacobs, where the Court failed to inquire into his indigency status and appoint counsel after appellant explained to the court that he was unable to afford an attorney, and where the court failed to inquire into the knowing and voluntary nature of his waiver of counsel?

(App. 273.) The South Carolina Court of Appeals held that based upon the Petitioner's actions prior to trial, a waiver of his right to counsel could be inferred. In its opinion, the South Carolina Court of Appeals, however, did not address whether the trial court had adequately advised the Petitioner of the dangers of self-representation. Appellate counsel did not raise this specific issue in the petition for rehearing or in the petition for certiorari to the South Carolina Supreme Court.

In his PCR proceeding, the Petitioner alleged his appellate counsel was ineffective for abandoning the issue of whether he was warned of the dangers of self-representation by the trial court. The undersigned notes that the PCR court did not address this issue in

11

the context of ineffective assistance of appellate counsel.[5] (Return Attach. # 1 - PCR Order of Dismissal at 17-18.) In any event, the PCR court held that the Petitioner had sufficient familiarity with criminal proceedings due to prior experiences and thus had a sufficient basic knowledge of the court system and the dangers of self-representation. *Id.* at 18.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. In order to establish that counsel was ineffective, the Petitioner must prove that appellate counsel's performance: (1) fell below an objective standard of reasonableness and (2) that, but for appellate counsel's error, the outcome of the appeal would have been different. *Strickland*, 466 U.S. at 688-94. The first prong of the test requires that the Petitioner demonstrate that trial counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the Petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687.

In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland,* the Court must decide whether the Petitioner has established "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." The focus is upon "the 'fundamental fairness of the proceeding.'" *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (prejudice prong focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). A "reasonable probability" is therefore "one 'sufficient to undermine the confidence in the outcome.' " *Strickland*, 466 U.S. at 694. The Petitioner must show

---

[5]The PCR Court addressed whether appellate counsel was ineffective for failing to raise an issue regarding an allegedly improper bench warrant. (Return Attach. # 1 - PCR Order of Dismissal at 19-20.)

12

"that counsel's errors were so serious as to deprive the [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Lockhart*, 506 U.S. at 372 ("[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him").

Furthermore, while appellate counsel must be an "active advocate" for his client, he "need not advance every argument, regardless of merit, urged by appellant." *Evitts v. Lucey,* 469 U.S. 387, 394 (1985). The Supreme Court has recognized that it is good strategy to identify and present only the strongest issues and arguments on appeal. *Jones v. Barnes,* 463 U.S. 745, 751-53 (1983). Appellate counsel may "exercise judgment in identifying the arguments [to] be advanced on appeal." *McCoy v. Court of Appeals of Wis.*, 486 U.S. 429, 438 (1988).

The record shows that the Petitioner applied for the appointment of a public defender on April 17, 2000, while he was free on bond. However, because at that time the Petitioner was employed, he was deemed non-indigent and not eligible for a public defender. On August 11, 2000, during a hearing, the trial court informed the Petitioner that his case would be tried August 21, 2000, whether the petitioner had retained counsel or not. (App. 34.). The trial court asked the Petitioner whether he would like to apply for a public defender. *Id.* The Petitioner replied that he was "supposed to be getting Stacy Lewis" to represent him. The trial court then stated:

> You're up for trial with or without an attorney the week of the twenty-first of this month. We're not going to put off the trial for you to get a lawyer. You've either got to get one or-you haven't applied for a public defender, so, we can't appoint you one. But we can't keep rocking along without a trial being disposed of. Do you understand that?

The Petitioner responded, "Yes sir." *Id.*

The Petitioner's case was not called the week of August 21, 2000. On August 24, 2000, however, the trial court held another hearing with the Petitioner regarding whether a bench warrant was properly issued and should be lifted. (App. 39-53.) During the hearing, the Petitioner told the trial court he had $800 of the $1,000 needed to retain Stacy Lewis as his attorney, but he could not earn the remaining money if he remained in jail. (App. 44-45.) He asked the trial court to release him on bond so he could return to work. (App. 45.) The trial court refused to lift the bench warrant. The trial court ended the hearing by telling the Petitioner, "You can go back in there and when you get your lawyer they will call your case but I've heard all I need to hear. Judge Floyd issued a bench warrant and I'm sure he had good reason to issue it." (App. 52.)

The Petitioner's case was called for trial on September 12, 2000. (App. 57.) The trial court asked the Petitioner if he had retained an attorney. *Id*. The Petitioner stated that he had "lawyers that [were] willing to take his case" and his family had the funds to retain attorney Stacy Lewis but the assistant solicitor had prevented him from getting an attorney because she told Lewis that the trial court would not grant a continuance. *Id.* The trial court called Lewis on the speaker telephone and Lewis stated that he did not represent the Petitioner. (App. 64.) Lewis stated that he had told the Petitioner's girlfriend to bring the retainer by 3:00 the previous afternoon, but she did not get to Lewis' office until 3:30. *Id.* By that time, Lewis stated he had left his office and he had "had it with them." *Id.* Lewis also confirmed that the assistant solicitor had informed him that the trial court would not likely grant a continuance in the case. (App. 65.)

The trial court stated that the Petitioner had been given plenty of time to retain an attorney and had been warned that the Petitioner's trial would begin without an attorney. (App. 67.) The Court found that the Petitioner had waived his right to counsel and the trial court proceeded with the trial. (App. 72.) The trial court stated that he was relying on *State*

14

*v. Jacobs*, 245 S.E.2d 606 (S.C. 1978), in finding the Petitioner had waived his right to counsel. (App. 67.) In *Jacobs,* the trial judge urged the defendant on several occasions to retain a lawyer and the case was continued at least once to enable him to hire an attorney. 245 S.E.2d at 607. Although the defendant never expressly waived his right to counsel, the court held the defendant had waived his right to counsel by his conduct because he was given reasonable time to secure counsel, he was financially capable of retaining counsel, and the court had done all it could to advise him to seek counsel. *Id.*

On direct appeal, the South Carolina Court of Appeals agreed and affirmed. The court held that the Petitioner had repeatedly told the trial court that either he or his family had the funds to retain counsel. Further, the court held that the trial court had done all it could to encourage the Petitioner to obtain counsel. The court concluded that the Petitioner through his actions, had waived his right to counsel.

A criminal defendant has the right pursuant to the Sixth Amendment of the United States Constitution to the assistance of counsel for his defense and the corollary right to waive counsel. *Faretta*, 422 U.S. at 818. A defendant who is waiving counsel, must do so "clearly and unequivocally." *Fields v. Murray,* 49 F.3d 1024, 1028-1029 (4th Cir. 1995) (citations omitted). Some courts have recognized three ways in which a defendant may relinquish his right to counsel: (1) waiver by an affirmative, verbal request; (2) waiver by conduct; and (3) forfeiture. *See State v. Boykin*, 324 S.C. 552, 556, 478 S.E.2d 689, 690 (Ct. App.1996).

The record is clear that the Petitioner did not waive counsel through an affirmative verbal request. However, the record shows that as found by the state courts, the Petitioner relinquished his right to counsel through waiver or forfeiture by his conduct.[6]

A "waiver is an intentional and voluntary relinquishment of a known right," and the Supreme Court has explicitly held that a defendant can voluntarily and intelligently waive the right to counsel. *Faretta,* 422 U.S. at 814-15. "At the other end of the spectrum is forfeiture . . . which results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *United States v. Goldberg,* 67 F.3d 1092, 1099-1101 (3d Cir. 1995). Some courts have held that "[f]orfeiture can result regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding pro se." *United States v. Thomas,* 357 F.3d 357, 362 (3d Cir. 2004)(*quoting Goldberg*, *supra* at 1101)(holding where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed pro se is mandated because that defendant has forfeited the right to counsel). Forfeiture does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *Thomas,* 357 F.3d at 362 (*quoting Goldberg, supra* at

---

[6]As stated above, the trial court ended the August 24th hearing by telling the Petitioner, "You can go back in there and when you get your lawyer they will call your case but I've heard all I need to hear. Judge Floyd issued a bench warrant and I'm sure he had good reason to issue it." (App. 52.) The Petitioner contends that he construed this statement from the trial court to mean that once he retained counsel, the case would be called for trial. (Pet.'s Mem. Opp. Summ. J. Mot. at 39.) Such an interpretation would require that this lone statement be taken entirely out of context. Furthermore, the Petitioner did not raise this argument to the trial court on September 12th. Rather he insisted that his family had the funds to retain counsel and that he had "lawyers that [were] willing to take [his] case . . . " (App. 61-62.)

16

1100-02). See also *State v. Thompson*, 584 S.E.2d 131 (S.C. App. 2003) (holding the right to counsel may be forfeited by a defendant's failure to retain counsel within a reasonable time, even if this forfeiture causes the defendant to proceed pro se); *Commonwealth v. Coleman,* 905 A.2d 1003, 1006-08 (Pa.Super. 2006) (affirming a finding of forfeiture where defendant, who had the means to retain counsel, appeared without counsel or engaged in behavior that forced counsel to withdraw).

In his PCR proceeding, the Petitioner alleged his trial counsel was ineffective for abandoning the issue of whether the trial court erred in failing to warn the petitioner of the dangers of self-representation. As noted above, the PCR Court held that the record established that the Petitioner "understood his right to counsel and the dangers of self-representation." (App. 15.) The PCR Court cited *Bridwell v. State*, 413 S.E.2d 30, 31 (S.C. 1992), in which the court held that in the absence of a specific inquiry by the trial judge addressing the disadvantages of proceeding pro se, the court will look to the record to determine whether petitioner had sufficient background or was apprised of his rights by some other source. This finding by the PCR court is one of fact, and thus entitled to a presumption of correctness. *See Fields,* 49 F.3d at 1032 (stating that question of whether a defendant invoked right to self-representation is one of fact entitled to the presumption of correctness). The Petitioner has the burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the Petitioner fails to demonstrate that appellate counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Even assuming that here the Petitioner did not forfeit his right to counsel, but rather waived it through his dilatory conduct, a colloquy explaining the dangers of self-representation is not required by the Constitution or any Supreme Court precedent. *Wilkerson v. Klem,* 412 F.3d 449, 453-454 (3d Cir. 2005). "A waiver colloquy is a

17

procedural device; it is not a constitutional end or a constitutional right . . . . the colloquy does not share the same status as the right itself." *Commonwealth v. Mallory*, 596 Pa. 172, 941 A.2d 686, 697 (2008) (discussing absence of waiver colloquy in context of defendant's waiver of jury trial), cert. denied --- U.S. ----, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). Moreover, the absence of an on-the-record colloquy does not establish that a defendant failed to understand the right he waived. Defendants can waive their fundamental rights in the absence of a colloquy. Waivers can occur by conduct or by implication, as in the case of a criminal trial conducted in absentia after the defendant fails to appear. *Id.*

Upon a review of the record, the undersigned finds that the Petitioner's waiver of counsel was knowing and voluntary and although the trial judge did not specifically address the disadvantages of self-representation directly with the Petitioner, based on the record, the Petitioner made a valid and knowing waiver. Accordingly, the undersigned finds that the Petitioner cannot demonstrate that state courts erred in finding he had waived his right to counsel or that appellate counsel was ineffective. The state court's rejections of these claims were not contrary to clearly established principles, did not involve an objectively unreasonable application of federal law, nor were based on an unreasonable determination of the facts. Therefore, these claims should be dismissed.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 17) be GRANTED; and the habeas petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                                                                    s/Bruce Howe Hendricks
                                                                                     United States Magistrate Judge

August 13, 2010
Greenville, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**